# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK HENRY SHANKS, <br>     Plaintiff, <br><br> v. <br><br> L-3 COMMUNICATIONS VERTEX AEROSPACE LLC, et al., <br>     Defendants. | CV 19-06313 DSF (AFMx) <br><br> Order GRANTING Plaintiff's Motion to Remand (Dkt. 23) |

    Defendants Vertex Aerospace LLC (Vertex),[1] Paul Sichenzia, and Patrick Bantilan (collectively, Defendants)[2] removed this case based on diversity and federal question jurisdiction and moved to dismiss. Dkts. 1, 11, 13. Plaintiff Mark Henry Shanks moved to remand. Dkt. 23. The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15.

## I. Factual Background

    Plaintiff is an aircraft mechanic who worked for Defendant Vertex between June 2013 and May 2017. During his employment, Plaintiff was subjected to unlawful labor practices and racial harassment, which he reported to Defendants. Dkt. 1-1 (Compl.) ¶¶ 11-13. In July 2015,

---

[1] Plaintiff has identified the Defendant as "L-3 Communications Vertex Aerospace LLC." Vertex clarifies in its Notice of Removal that its correct corporate identity is "Vertex Aerospace LLC."

[2] Sichenzia and Bantilan are collectively referred to as Individual Defendants.

after complaining that he had been racially harassed by a coworker, Plaintiff received a written warning from Defendants "for not having his Air Frame & Power Plant (A&P) license." Id. ¶¶ 13-15. Plaintiff complained to the Individual Defendants that that he "was previously instructed that he did not need an A&P license" and had worked for Vertex for "almost a decade without the license." Id. ¶¶ 17-18. Defendants subsequently "told [Plaintiff] that the A&P license was not required and the issue was dropped." Id. ¶ 18.

In January 2016, Plaintiff was diagnosed with bladder cancer. Id. ¶ 19. He underwent a biopsy for the cancer on March 6, 2016 and had surgery on November 21, 2016. Id. ¶¶ 19-20. After these two procedures, Plaintiff requested unspecified accommodations related to his medical condition from his supervisor, Defendant Bantilan. Id. ¶ 22. Bantilan denied both requests "without engaging in any interactive process." Id.

In early February of 2017 Plaintiff was injured at work. Id. ¶ 22. Shortly after the incident, "after previously waiving any requirement that [Plaintiff] obtain an [A&P] license," Bantilan ordered Plaintiff to obtain his A&P license by April 2, 2017. Id. ¶ 24. Plaintiff informed Defendants that he was scheduled to undergo another cancer treatment surgery on April 26, 2017 and "did not feel well enough to be confident that he could pass the [licensing] exam" while undergoing treatment. Id. ¶¶ 26-27. Plaintiff requested "the reasonable accommodation of being able to obtain the license after he had completed his cancer treatment." Id. ¶ 27. Defendants "refused to engage [] in the interactive process" with Plaintiff and denied his request. Id. ¶ 28.

After Plaintiff's work injury in February 2017, Individual Defendants "went out of their way to embarrass, humiliate, and cause Shanks to suffer anxiety, often in front of his coworkers." Id. ¶ 29. Individual Defendants "scowled and made faces while staring or gesturing at Shanks, made humiliating comments that were directly related to Shanks['s] disability, [and] spent an unusual and excessive amount of time staring at Shanks while Shanks worked." Id. This

continued "up until Shanks took medical leave for cancer surgery" on April 26, 2017.  Id. ¶¶ 29, 32.

Plaintiff underwent cancer treatment surgery on April 26, 2017.  Id. ¶ 32.  On May 1, 2017, he was notified that he had been terminated by Defendants.  Id. ¶ 33.

On April 25, 2019, Plaintiff sued Vertex and the Individual Defendants in California Superior Court.  He asserted eight causes of action against Vertex, including violations of California's Fair Employment and Housing Act (FEHA), Intentional Infliction of Emotional Distress (IIED), and Retaliation.  The claims for Disability Harassment under FEHA (FEHA Harassment) and IIED are also asserted against the Individual Defendants.

Defendants removed the case based on diversity jurisdiction and preemption under Section 301 of the Labor Management Relations Act (LMRA).  Dkt. 1 (Removal).  Vertex and the Individual Defendants separately moved to dismiss.  Dkt. 11 (Individual Defendants MTD), Dkt. 13 (Vertex MTD).  On August 4, 2019, Plaintiff filed a Motion to Remand.  Dkt. 23 (Mot.).

## II. Discussion

A. **Plaintiff's Motion to Remand**

1. **Diversity Jurisdiction**

The Complaint asserts claims of FEHA Harassment and IIED against the Individual Defendants who, like Plaintiff, are citizens of California.  Compl. ¶¶ 61-70, 96-105.  Defendants contend that the Individual Defendants were fraudulently joined and their citizenship should be disregarded for purposes of establishing diversity.[3]  Defendants challenge the claims against the Individual Defendants on the following grounds:

---

[3] The parties do not dispute that Plaintiff and Vertex are diverse and the amount in controversy exceeds $75,000.  See Removal at 12-14, 19-21.

3

- Plaintiff's claims against the Individual Defendants are barred by the respective statutes of limitations;

- Plaintiff has failed to state a claim for FEHA Harassment or IIED and neither claim can be remedied by amending the Complaint; and

- Plaintiff's IIED claim is preempted by the exclusive remedy provision of California's Workers Compensation Act.

Under 28 U.S.C. § 1332(a), district courts have original diversity jurisdiction over civil actions in which (1) complete diversity of citizenship exists between the parties and (2) the amount in controversy exceeds $75,000. However, there is an "exception to the requirement of complete diversity . . . where a non-diverse defendant has been 'fraudulently joined.'" Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001). "Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, '[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" Id. (alteration in original) (quoting McCabe, 811 F. 2d at 1339).

"[T]he test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent." Grancare, LLC v. Thrower, 889 F.3d 543, 549 (9th Cir. 2018). In evaluating a claim of fraudulent joinder, "a federal court must find that a defendant was properly joined and remand the case to state court if there is a 'possibility that a state court would find that the complaint states a cause of action against any of the [non-diverse] defendants.'" Id. (quoting Hunter v. Philip Morris USA, 582 F.3d 1039, 1044 (9th Cir. 2009). In this inquiry, "the district court must consider . . . whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend." Id. at 550.

a. <u>Statute of Limitations</u>

Defendants contend that the claims against the Individual Defendants are untimely because the relevant acts supporting these

claims are alleged to have occurred before the statute of limitations period. Dkt. 25 (Opp'n) at 7-9.

Before a plaintiff may file a FEHA civil complaint, he must timely file an administrative complaint with the Department of Fair Employment and Housing. Williams v. City of Belvedere, 72 Cal. App. 4th 84, 90 (1999). This administrative complaint must be filed within one year of the unlawful conduct. See Cal. Gov't Code § 12960(b), (d). Because Plaintiff filed his administrative complaint on April 27, 2018, Defendants argue that his FEHA claim should be limited to "events that occurred" within one year of that filing: "on or after April 28, 2017." Opp'n at 8.

The statute of limitations for intentional infliction of emotional distress is two years. See Cal. Code Civ. Proc. § 335.1 (providing a two-year limitations period for claims involving "injury to . . . an individual caused by the wrongful act or neglect of another"); Johnson v. Lucent Technologies Inc., 653 F.3d 1000, 1008 (9th Cir. 2011) (accepting the district court's conclusion that California's statute of limitations for IIED claims is two years). This period begins to run "when the plaintiff suffers severe emotional distress as a result of outrageous conduct by the defendant." Soliman v. CVS RX Servs., Inc., 570 Fed. Appx. 710, 711 (9th Cir. 2014). Because Plaintiff filed his Complaint on April 25, 2019, Defendants contend that "only events occurring on or after April 25, 2017 are material to Plaintiff's IIED claim." Opp'n at 8.

Defendants assert that the only event alleged to fall within the limitations period for either claim is Plaintiff's termination by Vertex, which occurred on May 1, 2017. Opp'n at 8; Compl. ¶ 32 ("In or about May 1, 2017, while recovering at home, Shanks was notified that he had been terminated."). But a plaintiff cannot predicate a harassment or IIED claim on his termination alone. See Lawler v. Montblanc North America, LLC, 704 F.3d 1235, 1244 (9th Cir. 2013) ("[Commonly] necessary personnel management actions such as hiring and firing," do not constitute harassment under FEHA); Janken v. GM Hughes Electronics, 46 Cal. App. 4th 55, 80 (1996) ("A simple pleading of personnel management activity is insufficient to support a claim of

5

intentional infliction of emotional distress, even if improper motivation is alleged."). Defendants therefore conclude that the claims against the Individual Defendants are barred by the applicable statutes of limitations and, given that Plaintiff never reported to work during the statutory period, he cannot allege additional facts to save the claims. Opp'n at 8-9.

This argument fails for two reasons. First, as to Plaintiff's IIED claim, the timely allegations in the Complaint are not limited to his termination alone. The Complaint states that Individual Defendants' harassment of Plaintiff continued "up until Shanks took medical leave for cancer surgery [***on April 26, 2017***]." Compl. ¶¶ 29, 32. Therefore, the Complaint sufficiently alleges non-"personnel management actions" by the Individual Defendants within the statutory period (which began on April 25, 2017). Plaintiff's IIED claim is not barred by the statute of limitations.

Second, it is not clear that either claim is entirely foreclosed under state law, as Plaintiff's termination may be part of a "continuing violation" that tolls the statute of limitations. Under the continuing violation doctrine,

> when an employer engages in a continuing course of unlawful conduct under the FEHA by refusing reasonable accommodation of a disabled employee or engaging in disability harassment, . . . the statute of limitations begins to run, not necessarily when the employee first believes that his or her rights may have been violated, but rather, *either* when the course of conduct is brought to an end . . . *or* when the employee is on notice that further efforts to end the unlawful conduct will be in vain.

Richards v. CH2M Hill, Inc., 26 Cal. 4th 798, 823 (2001) (emphasis in original); see also Murray v. Oceanside Unified Sch. Dist., 79 Cal. App. 4th 1338, 1363 (2000) (continuing violations doctrine applies to IIED claim where the alleged outrageous conduct is an ongoing pattern of discrimination or retaliation).

6

The California Supreme Court has explained that, under some circumstances, managerial acts can also serve as the basis for state law tort claims: "[S]ome official employment actions done in furtherance of a supervisor's managerial role can also have a secondary effect of communicating a hostile message." Roby v. McKesson Corp., 47 Cal. 4th 686, 709 (2009) (citing Miller v. Dept. of Corrections, 36 Cal. 4th 446, 466 (2005)). A "FEHA plaintiff may establish a supervisor's liability for harassment by providing evidence of hostile social interactions along with supplemental evidence of official employment actions that reinforce an underlying hostile message." Negherbon v. Wells Fargo Bank, No. 15-CV-02368-JCS, 2015 WL 6163570, at *6 (N.D. Cal. Oct. 21, 2015) (citing Roby, 47 Cal. 4th at 708-10). The same is true for a claim of IIED; see Olguin v. Int'l Paper Co., No. CV 16-01865-AB (Ex), 2016 WL 1643722, at *3 (C.D. Cal. Apr. 26, 2016) ("[The California Supreme Court in] Janken did not hold that, as a matter of law, an IIED claim cannot be based on managerial activity."). When a supervisor's "behavior goes beyond the act of termination," such as acting "in a deceptive manner that results in the plaintiff being denied [ancillary] rights," then the plaintiff may plausibly assert an IIED claim against the supervisor. Dagley v. Target Corp., No. CV 09-1330-VBF(AGRx), 2009 WL 910558, at *3 (C.D. Cal. Mar. 31, 2009) (citations omitted) (allegation that the plaintiff was terminated during her medical leave for a pretextual reason was sufficient to defeat defendants' claim of fraudulent joinder); see also Barsell v. Urban Outfitters, Inc., No. CV 09-02604 MMM (RZx), 2009 WL 1916495, at *7 (C.D. Cal. July 1, 2009) ("[I]t is possible a jury might conclude that communicating the termination decision while [plaintiff] was hospitalized for depression was conduct that was outside the normal employment relationship and was designed to cause [plaintiff] stress.").

Thus, a plaintiff may state a claim for FEHA Harassment or IIED based in part on timely allegations of unlawful termination. See Scott v. Gino Morena Enterprises, LLC, 888 F.3d 1101, 1112 (9th Cir. 2018) ("[T]he entire time period of the hostile environment may be considered by a court for the purposes of determining liability so long as at least one act contributing to the claim occurs within the filing period."); see

also Richards, 26 Cal. 4th at 819 (FEHA statute of limitations should be interpreted liberally to "promote the resolution of potentially meritorious claims on the merits"). Here, Plaintiff has alleged that his termination, which occurred days after he underwent cancer treatment surgery, was part of a months-long harassment campaign that encompassed other acts that occurred before the statutory period. While these claims are tenuous, their failure is not "obvious according to the settled rules of the state," Morris, 236 F.3d at 1067, or impossible to be cured by amendment of the Complaint. Hunter, 582 F.3d at 1046.

Because there is at least a possibility that a state court would apply the continuing violation doctrine here, Plaintiff's claims against the Individual Defendants for IIED and FEHA Harassment are not necessarily barred by the statute of limitations.

> b. <u>Failure to State a Claim</u>

Next, Defendants argue that Plaintiff's claims for FEHA harassment and IIED are "legally insufficient" and "cannot be cured." Removal at 19. Both claims "derive from the [same] conduct." Id. at 11. Defendants maintain that "nearly all of Plaintiff's allegations against the Individual Defendants are non-actionable personnel management actions" that cannot support an IIED or FEHA Harassment claim. Opp'n at 12, 15. The remaining allegations, according to Defendants, are insufficiently "severe or pervasive" to state a claim for harassment, id. at 12, or are "trivial incidents that fall well short of what is necessary to support an IIED claim." Id. at 15.

FEHA makes it unlawful for an "an employer . . . or any other person," to harass an employee because of age, disability, or medical condition. Cal. Gov. Code § 12940(j)(1). Unlike discriminatory employment actions under FEHA, which are limited to "employers," harassment claims may be brought against any individual. Under FEHA, "harassment" includes: "(a) [v]erbal harassment, e.g., epithets, derogatory comments or slurs on a [discriminatory] basis" or "(b) physical harassment, e.g., assault, impeding or blocking movement, or any physical interference with normal work or movement, when

8

directed at an individual on a [discriminatory] basis." Cal. Code Regs. Tit. 2 § 11019, subd. (b)(2). "Harassment [] consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management." Janken, 46 Cal. App. 4th at 65.

To plead a claim for IIED, a plaintiff must allege "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Hughes v. Pair, 46 Cal. 4th 1035, 1050 (2009).

First, as noted above, California law does not entirely foreclose Plaintiff's reliance on "personnel management decisions" to assert claims for IIED or FEHA Harassment. Roby, 47 Cal. 4th at 708-10.

Second, the Complaint alleges more than just "personnel actions." Plaintiff asserts that the Individual Defendants "scowled and made faces while staring or gesturing at Shanks [and] made humiliating comments that were directly related to Shank's disability." Compl. ¶ 29. This was done "in front of Shanks' coworkers" to "embarrass, humiliate, and cause Shanks to suffer anxiety." Id. The conduct persisted for almost two months, during which time Plaintiff was preparing for cancer treatment. Id. Though these allegations are vague and may not ultimately suffice, the Court cannot conclude that Plaintiff's claims will "obviously fail" in state court. And "[n]othing precludes Plaintiff from amending his complaint with facts pertinent to the alleged claims" on remand. Nelson v. PetSmart, Inc., No. 2:15-CV-08049-ODW (AJW), 2015 WL 6566003, at *3 (C.D. Cal. Oct. 30, 2015).[4]

---

[4] Defendants also argue that Plaintiff "fails to connect the alleged harassment to his protected status (i.e., disability)." Opp'n at 13. But the Complaint plainly states that Defendants' harassment included "humiliating comments that were directly related to [Plaintiff's] disability." Compl. ¶ 29. At this stage, that is enough.

### c. Workers Compensation Preemption

Defendants argue that Plaintiff's IIED claim is barred by the exclusive remedies provision of California's Workers Compensation Act. Removal at 19. It is true that workers' compensation generally provides the exclusive remedy for wrongful conduct that occurs "in the normal course of the employer-employee relationship." Miklosy v. Regents of Univ. of California, 44 Cal. 4th 876, 902 (2008). However, one California Court of Appeal clarified that claims of intentional infliction of emotional distress based on "[unlawful] discrimination and retaliation are not subject to workers' compensation exclusivity." Light v. Cal. Dep't of Parks & Recreation, 14 Cal. App. 5th 75, 101 (2017) (holding that the plaintiff employee could pursue an IIED claim where the conduct at issue violated FEHA and also satisfied the elements of an IIED claim"). Because Plaintiff's IIED claim is based on alleged harassment and discrimination outside of the "normal course" of the employer-employee relationship, Defendants have failed to show it is doomed to fail in state court.

The Court concludes there is a possibility that the state court would find Plaintiff's claims against the Individual Defendants (or an amended version of them) state a claim for FEHA Harassment or IIED. Therefore, the Individual Defendants have not been fraudulently joined, complete diversity does not exist, and the Court lacks jurisdiction under 28 U.S.C. § 1332. Grancare, 889 F.3d at 549.

### 2. LMRA Preemption

Defendants next argue that Section 301 of the LMRA "preempts Plaintiff's claims because they derive from and/or are substantially dependent on interpretation of multiple provisions of the [Collective Bargaining Agreements or] CBAs." Removal at 5. Plaintiff does not dispute that his employment relationship with Vertex was subject to Collective Bargaining Agreements governed by provisions of the LMRA. Instead he argues that the Complaint requires "[no] more than a mere consultation of the CBA" and therefore is not subject to LMRA preemption. Mot. at 5-6.

LMRA preemption is analyzed using a two-part test. First, the court asks "whether a particular right inheres in state law or, instead, is grounded in a CBA." Matson v. United Parcel Serv., Inc., 840 F.3d 1126, 1132 (9th Cir. 2016) (quoting Burnside v. Kiewit Pac. Corp., 491 F.3d 1053, 1060 (9th Cir. 2007)). If the claim is founded directly on rights created by a CBA, preemption is warranted. Caterpillar Inc. v. Williams, 482 U.S. 386, 394 (1987).

The second part of the test asks "whether a state law right is 'substantially dependent' on the terms of a CBA." Matson, 840 F.3d at 1132. In doing so, the key question is "whether the claim can be resolved by 'looking to' versus interpreting the CBA." Id. If the claim requires "interpretation" of the CBA it is preempted; if it only requires "looking to" the CBA, it is not. Id. Interpretation, in this context, is defined narrowly and "it means something more than 'consider,' 'refer to,' or 'apply.'" Id. "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Livadas v. Bradshaw, 512 U.S. 107, 124 (1994). Further, "[i]f the claim is based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." Matson, 840 F.3d at 1132. State law discrimination claims "will rarely rest on rights created by CBAs or require interpreting CBAs in the sense required for § 301 preemption." Id. at 1136.

      a.      <u>Nonpayment of Wages</u>

Defendants first argue that Plaintiff has asserted a claim for "Nonpayment of Wages," which is preempted by § 301 of the LMRA. This claim appears on the caption of Plaintiff's Complaint and is supported by one paragraph of factual allegations describing Plaintiff's overtime work and work conditions. Id. (citing Compl. at 1, ¶ 11). Plaintiff counters that he has not asserted a *cause of action* for nonpayment of wages and its inclusion on the caption of the Complaint was a "typographical error." Mot. at 5 (noting that the caption contains "two causes of action [including Nonpayment of Wages] labeled with

the number '6'" but no corresponding cause of action for Nonpayment of Wages is asserted in the Complaint).[5] Defendants cite no authority to support the proposition that a party can maintain a cause of action by mentioning it in the case caption without asserting it in the body of the complaint.

"It is clear that technical errors in the caption should not control over the substance of the complaint." Ostrofsky v. Sauer, No. 2:07-CV-00987 MCE KJN PS, 2010 WL 891263, at *3 fn.4 (E.D. Cal. Mar. 8, 2010) (quotations omitted); see also 5 Wright and Miller, Federal Practice and Procedure § 1321 ("It is the body of a pleading which controls, not the caption."). The Court agrees that Plaintiff has not asserted a claim for nonpayment of wages and the non-asserted claim cannot serve as the basis for federal jurisdiction.[6]

### b. IIED, Retaliation, Wrongful Termination, and Violation of FEHA

Defendants next argue that Plaintiff's remaining claims for IIED, Retaliation, Wrongful Termination, and violation of FEHA are preempted by § 301 of the LMRA. Defendants maintain that, to

---

[5] The "Nonpayment of Wages" cause of action appears in the caption of Plaintiff's Complaint (alongside the other cause of action #6) as follows:

) (6) Failure to Prevent Harassment,
) Discrimination, or Retaliation;
) (6) Nonpayment of Wages;

[6] The Complaint's single paragraph of factual allegations related to overtime wages—unconnected to a cause of action—is also insufficient to maintain a claim and warrant federal jurisdiction. See Gahafer v. E & M Int'l, Inc., No. 17-1165 MV/SCY, 2018 WL 2095592, at *2 (D.N.M. May 7, 2018) (holding that "no federal cause of action" was asserted when the allegations "relating to a federal claim d[id] not even appear in the 'Causes of Action' section of his Complaint but [were] instead set out in the factual background of the Complaint.").

adjudicate these claims, "the Court will have to interpret and apply" provisions of the CBA related to:

> (a) the employer's right to manage operations, discipline employees, and terminate for just cause; (b) progressive discipline; (c) the employer's disability accommodation obligations; (d) the provision of leaves of absence; (e) the application of the standard or alternative workweek rules and related overtime provisions; and (f) mechanic's job duties and requirements.

Removal at 9-10 (citations omitted); see also id. at 11 (resolution of IIED claim "derives from the conduct giving rise to Plaintiff's discrimination and retaliation claims" and "turns on the application of disputed CBA terms").

But Defendants make no effort to demonstrate that any of the identified CBA terms are ambiguous or in dispute. Alaska Airlines Inc. v. Schurke, 898 F.3d 904, 921 (9th Cir. 2018) ("[C]laims are only preempted to the extent there is an active dispute over the meaning of contract terms."). Defendants nonetheless maintain that the LMRA preempts state law claims where the defendant's "proffered nondiscriminatory reason" for plaintiff's termination "requires interpretation of the CBA." Opp'n at 24 (collecting cases). But in all the cases cited by Defendants, the plaintiff's affirmative claim required the court to interpret the terms of the relevant CBA.

No such circumstances exist here. At most, it is *Defendants'* arguments that would require the Court to look to the CBA—but a defendant cannot create removal jurisdiction merely by identifying a defense based on the terms of the CBA. See Humble v. Boeing Co., 305 F.3d 1004, 1011 (9th Cir. 2002) ("[R]eliance on CBA provisions to defend against an independent state law claim does not trigger § 301 preemption"). Rather, "the need to interpret the CBA must inhere in the nature of the plaintiff's claim." Cramer v. Consolidated Freightways Inc., 255 F.3d 683, 691 (9th Cir. 2001) (en banc). While the CBA may prove relevant in some way to this case, Defendants have

13

not persuaded the Court that its "interpretation"—as defined in the LMRA preemption context—will be required.

Plaintiff's claims are not preempted by the LMRA and the Court therefore lacks federal question jurisdiction.

The motion to remand is GRANTED. The case is remanded to the Superior Court of California, Los Angeles County, Case No. 19STCV14504.

IT IS SO ORDERED.

Date: October 21, 2019

*Dale S. Fischer*
Dale S. Fischer
United States District Judge